UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PIH HEALTH HOSPITAL - WHITTIER, a California non-profit public benefit corporation; and PIH HEALTH HOSPITAL - DOWNEY, a California non-profit public benefit corporation, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 24-cv-02779 |
| v. | ) ) | Judge April M. Perry |
| HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Co. d.b.a BLUE CROSS AND BLUE SHIELD OF ILLINOIS, and DOES 1 THROUGH 25, INCLUSIVE, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

PIH Health Hospital-Whittier and PIH Health Hospital-Downey, (collectively, "PIH" or "Plaintiff"), filed this action in Illinois state court on March 1, 2024. *See* Circuit Court of Cook County Case No. 2024-L-002321. Plaintiff, a medical care provider, alleges in its complaint [Doc. 1-1] (the "Complaint") that it "rendered medically necessary services, supplies and/or equipment" to certain patients ("Patients") "until Patients became stable for discharge." Compl. ¶ 15. Health Care Service Corporation, a Mutual Legal Reserve Co. d.b.a Blue Cross and Blue Shield of Illinois ("HCSC" or "Defendant") is allegedly financially responsible for the medically necessary services, supplies, and/or equipment rendered to Patients by Plaintiff. *Id.* ¶ 16. But HCSC did not "fully and properly" pay. *Id.* ¶¶ 20, 22. By this failure, HCSC allegedly (i) breached its implied-in-fact contract with PIH (Count One), or (ii) owes PIH under the common law doctrine of *quantum meruit* (Count Two).

On April 5, 2024, Defendant removed this action to federal court. In its Notice of Removal [Doc. 1], Defendant argues federal question jurisdiction exists under 28 U.S.C. § 1331 because Plaintiff's state-law claims are completely preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA"). On May 3, 2024, Plaintiff filed a Motion to Remand [Doc. 16], and with it, a supporting memorandum (the "Remand Memo."), contesting complete preemption. Defendant later filed its opposition [Doc. 22] ("Opp. Memo."), and the Plaintiff its reply [Doc. 23] ("Reply"). For the reasons stated below, the Motion to Remand [Doc. 16] is granted, and this action is remanded to the Circuit Court of Cook County, Illinois.

## BACKGROUND

PIH is a medical care provider. Compl. ¶¶ 3-4. HCSC is an insurance company. *Id.* ¶ 5. At all relevant times, PIH was party to a written contract (the "Anthem Contract") with Blue Cross of California d/b/a Anthem Blue Cross ("Anthem"). *Id.* ¶ 27. The Anthem Contract "obligated PIH to medically treat individuals belonging to health plans financed, sponsored, and/or administered by member companies belonging to the national Blue Cross Blue Shield Association, of which HCSC is one such member." *Id.* "The [Anthem] Contract also obligated PIH to accept as payment in full monies received from Blue Cross Blue Shield Association member companies (such as HCSC) that were made at the discounted rates found within the [Anthem] Contract." *Id.* ¶ 28. For HCSC plan enrollees to take advantage of these discounted rates, they needed to present to PIH a "Blue Card" (a program identification card) issued to them by HCSC. *Id.* ¶ 30.

Between September 2018 and April 2021, PIH provided medical treatment to the twenty (20) Patients identified in Exhibit A to the Complaint. *Id.* ¶ 12. PIH alleges that each of the

Patients were "enrollees and/or beneficiaries of health plans sponsored, financed, administered, and/or funded by HCSC" and presented a Blue Card to PIH at the time of their hospital stays. *Id.* ¶ 13. At some point (the parties suggest different orders of operations), PIH submitted its bills to either Anthem or HCSC directly (again, the parties disagree) and "coordinated with HCSC to determine whether the Claims were payable." Opp. Memo. at 3 (suggesting submission to Anthem after treatment); Compl. ¶ 14, 18, 36-37 (suggesting submission to HCSC and preauthorization of treatment). PIH alleges that it "received authorization for treatment from HCSC" as to each of the Patients' care, *id.* ¶ 14, though Defendant disputes this at least as to one Patient, Opp. Memo. at 9.

Plaintiff brings two counts in its Complaint. The first is for breach of an implied-in-fact contract, and centers around the following allegations: "[E]ach time one of the Patients presented to PIH their HCSC-issued 'Blue Card' . . . and/or otherwise identified themself as being a member/beneficiary of a health plan financed, sponsored, and/or administered by" HCSC, an implied-in-fact contract arose between PIH and HCSC by "which PIH agreed to render to that Patient all medically necessary services, supplies, and/or equipment needed by that individual and secondarily agreed to accept as payment, in full, monies received from HCSC that were in conformance to the discounted rates found in the [Anthem] Contract." *Id.* ¶¶ 31-33. The implied contract was formed by industry custom and practice, and through the prior course of conduct between the parties, which included communications between the parties regarding authorizations to render care to Patients, the submission of claims by PIH to HCSC, and the return of payment from HCSC to PIH. *Id.* ¶¶ 36, 39-40. According to Plaintiff, "HCSC breached the implied-in-fact contract by underpaying PIH for the medically necessary services, supplies

3

and/or equipment rendered or supplied to Patients." *Id.* ¶ 46. As a result, PIH suffered damages in an amount no less than $500,124.21. *Id.* ¶ 47.

Plaintiff's second count seeks recovery under a theory of *quantum meruit*, and centers around the following allegations: PIH did not render medical care to Patients gratuitously but with the understanding and expectation that HCSC would pay for that care. *Id.* ¶¶ 52, 55, 68. PIH expected to be paid the "usual and customary value . . . of the necessary medical treatment it rendered to Patients." *Id.* ¶¶ 53, 54; *see also id.* ¶ 66 ("The reasonable value of the medical care provided was and is the usual and customary charges of those services . . . ."). In rendering medical services to Blue-Card carrying Patients, PIH conferred a benefit upon HCSC, and HCSC implicitly requested that PIH do so through its authorizations of treatment, its "words and prior and ongoing conduct[,]" its collection of premiums, and industry custom and practice. *Id.* ¶¶ 58-60, 69. HCSC unfairly benefited from PIH's rendering of medical care to Patients in numerous ways, including by the delivery of those services constituting fulfillment of HCSC's obligations to secure medically necessary healthcare for its beneficiaries, which entitled HCSC to retain the financial reward of premium payments. *Id.* ¶¶ 41, 61, 69. HCSC also received the benefit of Patients' good will when those Patients were treated by PIH, a "first-rate medical facility." *Id.* ¶ 61. According to Plaintiff, "HCSC unjustly benefitted by not paying fully PIH for the reasonable value" of the services it rendered, and Plaintiff seeks $1,662,529.60 in damages as a result. *Id.* ¶ 66, 69.

In its removal papers, Defendant contends that jurisdiction exists over PIH's claim for payment as to care rendered to one of the twenty Patients ("Patient 9"), the same Patient whose treatment it says was not authorized. Notice of Removal at 4, 9. It asks the Court to exercise supplemental jurisdiction over the rest of PIH's claims. *Id.* at 12-14.

4

Neither party argues that payment in this case is owed pursuant to an express contract to which they are both parties. *See* Opp. Memo. at 3 ("HCSC is not a signatory to the Anthem Contract, and PIH does not bring a breach of the Anthem Contract claim against HCSC in this action."); Compl. ¶ 28 ("HCSC was not a signatory to or obligee of the [Anthem] Contract"). But Defendant argues that Patient 9's HCSC-administered benefit plan informs any payment terms between HCSC and PIH. In support of this argument, it relies on the assertion that coverage as to Patient 9 was denied in its entirety, and therefore the cause of any alleged underpayment was that the treatment given to Patient 9 was not authorized. Because any denial of coverage would have stemmed from the benefit plan's definition of medical necessity, Defendant claims the Court must interpret the plan to decide the outcome of this case. Opp. Memo. at 9-10; Notice of Removal at 9 ("The Claim was denied because it did not include a qualifying service that was covered under the Plan. . . . PIH's allegations therefore squarely predicate its claim for recovery on the terms and conditions of coverage contained in the ERISA Plan.").

Plaintiff disagrees. It states that the terms of the implied contract incorporated only its obligation to provide medically necessary treatment and to accept payment as outlined in the Anthem Contract. Compl. ¶ 29 (describing PIH's obligation to accept as payment in full payment "conforming to the rates found within the [Anthem] Contract"). As to Patient 9's benefit plan, PIH argues that medical necessity should not be determined by an "ERISA plan to which Plaintiff is not a party." Reply at 7 n.7. That Defendant may have "internally looked to the plan to determine the extent of coverage" should not, Plaintiff argues, render the benefit plan binding on Plaintiff, who was not a party to the Patients' plans and had distinct expectations of payment under a distinct implied contract. Reply at 10-11.

**LEGAL STANDARD**

With certain exceptions not applicable here, a defendant may remove "any civil action" from state to federal court in accordance with 28 U.S.C. § 1441(a) if the federal district court embracing the state court would have "original jurisdiction" over the action. 28 U.S.C. § 1441(a). If, however, "at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). When ruling on a motion to remand, a court "may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue[.]'" *Alicea-Hernandez v. Cath. Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003).

"Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 9–10 (1983)). The Supreme Court has explained that

> whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

*Id.* (quoting *Taylor v. Anderson,* 234 U.S. 74, 75–76 (1914)). In particular, then, "the existence of a federal defense normally does not create statutory 'arising under' jurisdiction, and 'a defendant may not [generally] remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law.'" *Davila*, 542 U.S. at 207.

6

There is an exception, however, to this general rule. When a federal statute "wholly displaces" the state-law cause of action through complete preemption, a case pleading only state-law claims can be removed. *Davila*, 542 U.S. at 207–08. This is so because when a federal statute completely pre-empts a state-law cause of action, a claim which comes within the scope of that cause of action is in reality based on federal law. *Id.* (quoting *Anderson,* 539 U.S. at 8); *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008) ("Complete preemption, really a jurisdictional rather than a preemption doctrine, confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim.").

"[T]he ERISA civil enforcement mechanism is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Franciscan Skemp*, 538 F.3d at 596 (internal quotations omitted) (quoting *Davila*, 542 U.S. at 209). "Congress enacted ERISA to 'protect ... the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Davila*, 542 U.S. at 208 (quoting 29 U.S.C. § 1001(b)). Its purpose "is to provide a uniform regulatory regime over employee benefit plans." *Id.* "To this end, ERISA includes expansive pre-emption provisions," *id.* (citing ERISA § 514, 29 U.S.C. § 1144), "which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Id.* (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523 (1981)). As a result, a "state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy

7

conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209.

In *Davila*, the Supreme Court established a two-part test for determining when ERISA completely preempts a state law claim. (1) "[I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan," (2) "and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA § 502(a)(1)(B)". *Franciscan Skemp*, 538 F.3d at 597 (quoting *Davila*, 542 U.S. at 210)). ERISA § 502(a)(1)(B) provides: "A civil action may be brought—(1) by a participant or beneficiary— . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Plaintiff and Defendant agree that *Davila* sets the controlling standard here. They disagree, however, on the application of that standard, each citing different opinions in support of their arguments. It is clear from those cases that courts both within and outside of the Northern District of Illinois "have reached differing results when analyzing breach of implied contract and quantum meruit claims brought by healthcare providers" against benefit plan administrators. *Stanford Health Care v. Health Care Serv. Corp.*, No. 23-CV-4744, 2023 WL 7182990, at *3 (N.D. Ill. Nov. 1, 2023) (collecting cases). Before turning to the analysis, then, a note on binding versus persuasive authority: This Court is bound to apply the law as articulated by the United States Supreme Court and the Seventh Circuit. District court decisions, on the other hand, are not authoritative on issues of law, though their reasoning "is of course entitled to respect." *Bank of Am., N.A. v. Moglia*, 330 F.3d 942, 949 (7th Cir. 2003); *Colby v. J.C. Penney Co.*, 811 F.2d

8

1119, 1124 (7th Cir. 1987) ("district judges in this circuit must not treat decisions *by other district judges,* in this and *a fortiori* in other circuits, as controlling"). Finally, even the decisions of another circuit's court of appeals are not given "automatic deference." *Colby*, 811 F.2d at 1123. With these guidelines in mind, the Court proceeds to its analysis.

## ANALYSIS

As the removing party, Defendant bears the burden of establishing that the Court has jurisdiction over this matter. *Schur*, 577 F.3d at 758. Defendant argues that *Davila's* first prong is satisfied because Plaintiff could have brought its claims under ERISA as an assignee of an ERISA beneficiary for at least one of the coverage claims. Opp. Memo. at 6-7. To Defendant, it "is irrelevant whether PIH brought the action as an assignee. The only question is whether PIH 'at some point in time, could have brought the claim under [section] 502(a)' as an assignee." *Id.* at 8 (quoting *Davila*, 542 U.S. at 210).

Plaintiff takes a different route. It focuses on distinguishing between state-law claims for inadequate compensation and claims related to the duties incumbent on benefit plan administrators to adequately cover plan beneficiaries. Remand Memo. at 8-9; Reply at 4. Specifically, as to the first prong of *Davila*, Plaintiff points out that the Seventh Circuit held in *Franciscan Skemp* that a provider is not standing in a beneficiary's shoes when it is not seeking to enforce rights under an ERISA plan. Reply at 2. Plaintiff argues it is seeking damages as opposed to benefits, and therefore the correct measure of its recovery should be whatever it is owed given the "Defendant's actions and representations relating to the claims in this case and the history between the parties." Reply at 5. To Plaintiff, the facts here are the same as the relevant facts in cases where complete preemption was not found. *See* Remand Memo. at 8-11; Reply at 3.

9

As set forth below, the Court finds Plaintiff's arguments more persuasive. Because the Court finds jurisdiction lacking, it does not address Defendant's supplemental jurisdiction arguments.

To apply the *Davila* test for complete preemption the Court must look to the complaint, the law under which the complaint's claims are brought, and the language of any governing documents. *See Davila*, 542 U.S. at 211. Considering these facts, mandatory authority on complete preemption requires the finding that PIH's claims are not completely preempted. The two cases which most inform this judgment are *Davila* and *Franciscan Skemp*. The Court begins its analysis with a review of those cases.

In *Davila*, the respondents sued under the Texas Health Care Liability Act alleging injury proximately caused by administrators' decisions not to authorize coverage for treatment recommended by their physicians. *Davila*, 542 U.S. at 204. The Supreme Court applied the first step of its test by noting that the respondents were an individual beneficiary and participant denied benefits under the terms of ERISA-regulated employee benefit plans, who "could have paid for the treatment themselves and then sought reimbursement through" an action under section 502(a)(1)(B). *Id.* at 211-12. Thus, their suits, though ostensibly brought under a state statute, were suits by a beneficiary or participant that could have been brought under ERISA to enforce the respondents' rights under a benefit plan after denials of coverage for medical care—the very purpose of ERISA. *See id.* at 208. Moreover, in applying the second step of its test, the Supreme Court found that "respondents bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA." *Id.* at 213. For these reasons, the Court found complete ERISA preemption and that the case was removable. *Id.*

10

In *Franciscan Skemp,* healthcare provider Franciscan Skemp Healthcare ("Franciscan") brought state-law claims of negligent misrepresentation and estoppel against employee benefit plan administrator Central States Joint Board Health and Welfare Trust Fund ("Central States"). *Franciscan Skemp*, 538 F.3d at 597. Franciscan had treated a Central States plan participant, Central States had initially represented that the participant was covered, and both parties had only later realized the participant had lost her benefits. *Id.* at 596. Central States refused to pay for her treatments. *Id.* Franciscan brought suit in Wisconsin state court, and Central States removed to federal court on the grounds that the claims were completely preempted by ERISA. *Id.* The district court held that the claims were preempted because Franciscan had taken an assignment of benefits from the beneficiary, filed a claim form with Central States, and thus was entitled as a beneficiary to bring a claim under ERISA.

The Seventh Circuit disagreed. It reasoned:

> Franciscan Skemp is not bringing these claims as [the beneficiary's] assignee. Admittedly at first glance it looks like a claim that would arise under ERISA—a beneficiary's assignee bringing an action to recover plan benefits. But upon closer examination, that is not at all what is happening here.
>
> Franciscan Skemp is bringing these claims of negligent misrepresentation and estoppel, not as [the beneficiary's] assignee, but entirely in its own right. These claims arise not from the plan or its terms, but from the alleged oral representations [regarding coverage] made by Central States to Franciscan Skemp.

*Id.* at 597. Thus, the Seventh Circuit did not disagree with the determination that the claim form evidenced an assignment of benefits; rather, the Court took issue "with the import of that determination." *Id.* What mattered was not that Franciscan could have at some point brought *some* claim under ERISA, but that the claims Franciscan in fact brought were assertions of its own rights, based on facts involving its own interactions with Central States, and not for

11

whatever benefits might be due under the plan but for whatever damages might be due under state law. *Id.* at 597–98. The complaint's references to the plan, and the fact that the plan might play a role in determining the amount of damages, did "not convert the claims into ones for plan benefits." *Id.* Therefore, applying *Davila* the Seventh Circuit concluded that the claims were not preempted. *Id.* at 598.

The Court agrees with Plaintiff that the situation here is like that in *Franciscan Skemp* in all legally significant respects. Rather than claims for misrepresentation and estoppel, PIH brings claims for breach of an implied-in-fact contract and *quantum meruit*. In bringing these claims, Plaintiff asks for relief not as someone entitled to seek benefits under an ERISA-regulated plan, but in its own right and seeking damages under state law. Plaintiff does so not through artful pleading, but through the actual content of its allegations. These allegations go to Plaintiff's own interactions with Defendant and how, in Plaintiff's view, those interactions result in violations of state law.

Under Illinois law,[1] to establish breach of contract, a plaintiff must prove: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages. *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 883 (7th Cir. 2022). "An implied-in-fact contract must contain all the elements of an express contract, but unlike an express contract or other contracts, its terms are inferred from the conduct of the parties." *Id.* The contractual duty is "inferred from the facts and circumstances and the expressions [on] the part of the promisor which show an intention to be bound." *Id.* Given these elements, it appears Plaintiff's first count indeed complains of breach of an implied-in-fact contract, not just in form but in substance. The allegations in the complaint (however meritorious

---

[1] The parties agree that Illinois law governs Plaintiff's claims, at least for our purposes here. *See* Reply at 9; Opp. Memo. at 11 n.9.

12

or unmeritorious they might be) plainly go to the elements of breach of an implied-in-fact contract: HCSC breached the mutual understanding existing between the parties and implied by their conduct that HCSC would pay PIH for the services it rendered Patients in accordance with the rates Defendant had historically paid, as set forth in the Anthem Contract, and as consideration PIH would treat patients carrying a Blue Card or otherwise identifying themselves as covered under an HCSC-administered benefit plan.

To recover under a *quantum meruit* theory under Illinois law, the plaintiff must prove: "(1) he performed a service to benefit the defendant, (2) he did not perform this service gratuitously, (3) defendant accepted this service, and (4) no contract existed to prescribe payment for this service." *Installco Inc. v. Whiting Corp.*, 784 N.E.2d 312, 318 (2002). Like with Plaintiff's first count (however meritorious or unmeritorious the claims might be), the factual allegations in support of Plaintiff's second count plainly complain of a right to payment under the theory of *quantum meruit*: it would be unfair to allow HCSC to receive the benefits Plaintiff conferred upon it by rendering a service to HCSC, indirectly and through Patients' medical treatments, without requiring HCSC to pay, where those services were accepted by HCSC through its words and actions and industry custom and where those services were not given by Plaintiff as a gift but with the expectation of compensation. Plaintiff's second count is indeed a cause of action for *quantum meruit*, not just in form but in substance.

These are alleged "wrong[s] not within § 502's scope." *Franciscan Skemp*, 538 F.3d at 598. Unlike in *Davila*, these are not claims for denied benefits under an ERISA benefit plan but claims for whatever damages might be due under state law based on PIH's assertions of its own rights. Like in *Franciscan Skemp*, PIH asserts those rights based on its own interactions with HCSC. And like in *Franciscan Skemp*, any connection between the benefit plan's terms and a

13

determination of damages for the implied contract and *quantum meruit* claims would "not convert the claims into ones for plan benefits." *Franciscan Skemp*, 538 F.3d at 597–98.

*Davila* did not say that any party which would have had standing to bring *any* claim under ERISA is a party whose claims must be preempted. If that had been the standard, the Supreme Court could have ended its prong-one analysis when it acknowledged that the respondents were participants and beneficiaries themselves. *See Davila*, 542 U.S. at 211. But it did not. *Davila* instead focused on both the individual bringing the claim and the substance of the claim(s) that individual actually brought:

> [I]f an individual brings suit *complaining of a denial of coverage* for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, . . . then the suit falls "within the scope of" ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought *his claim* under ERISA § 502(a)(1)(B), . . . , then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Id.* at 210 (emphases added). By referring to the complaints brought in the suit and by using the phrasing "his" claim, the Supreme Court instructed lower courts to look to the substance of the claims actually brought, not the universe of claims the litigant could have brought. And when the Supreme Court applied this prong, it did not speak in terms of standing but of the fact that what the respondents complained of was "only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans" and that those complaints could have been resolved through a § 502(a)(1)(B) action. *Id.* at 211. Thus, the court's finding that prong one was satisfied was at least as much about the substance of the claims as it was about the individuals bringing the claims—both went to whether the claims could have been resolved under ERISA.

In *Franciscan Skemp*, the Seventh Circuit similarly looked to both the individual and the substance of their claims. *Franciscan Skemp*, 538 F.3d at 597–98. The Court did not focus its

14

inquiry on assignment, even when applying prong one to a healthcare-provider plaintiff who would have required assignment to bring an ERISA claim. And it explicitly rejected the lower court's ruling that because Franciscan took an assignment of benefits it could have brought a claim under ERISA. *Id.* at 597. Rather, the Seventh Circuit concluded that even though the provider would have had standing to pursue a claim under ERISA, the provider was not, in fact, "bringing these claims as [the beneficiary's] assignee"—"Franciscan Skemp *could* bring ERISA claims in [the beneficiary's] shoes as a beneficiary for the denial of benefits under the plan; but it has not." *Id.* at 598. The court reached this conclusion by analyzing the complaint, the law on which the complaint's claims were based, and the language of the relevant documents, precisely what *Davila* instructed and what this Court has similarly attempted.[2] For these reasons, the Court finds that Plaintiff's claims could not have been brought under ERISA and are not preempted under *Davila* prong one.

Although it is not necessary to proceed to a prong-two analysis given the above findings, the Court also finds that *Davila*'s second prong is not satisfied here. In support of its argument that there is no independent legal duty between the parties outside of the ERISA benefit plan, Defendant relies most heavily on *John Muir Health v. Health Care Serv. Corp.*, No. 22-CV-6963, 2023 WL 4707430 (N.D. Ill. July 24, 2023). While the facts of *John Muir* are similar to those of this case, there is one glaring difference: The plaintiff in *John Muir* did not challenge removal of the case to federal court. The court's finding that "Defendants have done enough to

---

[2] Though not controlling, it is worth noting that other courts in this district have similarly refused to focus solely on assignment when applying *Franciscan Skemp* to claims of implied-in-fact contract and *quantum meruit*. *See, e.g., Stanford Health Care*, No. 23-CV-4744, 2023 WL 7182990, at *4; *Regents of Univ. of California on Behalf of UCLA Health Sys. v. Health Care Serv. Corp.*, No. 22 C 6960, 2024 WL 2209595, at *4 (N.D. Ill. May 14, 2024) (and noting that "at least one other court of appeals" found no preemption "where a provider brought state law claims for breach of implied-in-fact contract and quantum meruit" (citing *Emergency Grp. of Ariz. Prof. Corp. v. United Healthcare, Inc.*, 838 F. App'x 299, 300 (9th Cir. 2021)).

15

show that this case falls within ERISA's realm," *id.* at *4, is therefore unsurprising—it is much easier to meet a burden when there is no adversarial challenge. The fact that the *John Muir* court did not have the benefit of adversarial briefing or any dispute from the plaintiff about the topics addressed herein limits significantly the case's persuasive value.

As both parties note, many cases analyzing *Davila* prong two focus on the issue of whether the plaintiff's allegations involve a rate of payment issue (resulting in a finding of no preemption, because the rates paid to healthcare providers are typically set forth in separate contracts from ERISA-regulated benefit plans) or a right to payment issue (resulting in a finding of preemption, because right to payment is typically found to arise from an ERISA-regulated benefit plan). Indeed, after criticizing the rate/right framework, Defendant embraces its essence, arguing that prong two requires a finding of preemption because "[f]or the Court to determine whether PIH is entitled to any payment whatsoever, the Court must consult the Plan terms and decide whether the services were covered under the Plan's terms, including whether the services meet the Plan's definition of Medical Necessity in order to be covered." Opp. Memo. at 2. Were Patient 9's benefit plan the controlling contract between the parties, Defendant's argument would be compelling. But this is not what Plaintiff has alleged. To the contrary, Plaintiff has argued that it is the Anthem Contract and the relationship between Plaintiff and Defendant that governs the legal obligations in this case, not an ERISA benefit plan to which it is not a party. Defendant has not made a sufficient showing to the contrary.[3] Just like in *Franciscan Skemp*, the patient's right

---

[3] Where courts have found preemption owing to a connection between alleged state law claims and benefit plan terms, there is typically a much stronger connection between the two sets of legal obligations than Defendant has argued. For example, in *Lone Star*, a case frequently cited for the right/rate dichotomy, the Fifth Circuit suggested that preemption might exist for certain claims where it was "clear" that a written agreement between the parties referred to a benefit plan to determine which services the provider would be paid for—those that were covered, which were those that were medically necessary under the benefit plan. *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 530 (5th Cir. 2009). And there, the plaintiff specifically alleged that it

16

to receive benefits *under a benefit plan* is not at issue. *Franciscan Skemp,* 538 F.3d. at 599. Accordingly, the second prong of *Davila* is also not satisfied.

For all of the above reasons, the Court finds that federal subject matter jurisdiction is lacking. The case is remanded.

## CONCLUSION

Plaintiff's Motion to Remand [Doc. 16] is GRANTED, and this action is remanded to the Circuit Court of Cook County, Illinois.

Dated: December 26, 2024

_____
APRIL M. PERRY
United States District Judge

---

was owed the rates set forth in the written agreement between the parties (not any distinct implied agreement). *Id.* at 528.